**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clinton Thoredore Eldridge,<br><br>Petitioner,<br><br>v.<br><br>Unknown Gutierrez, et al.,<br><br>Respondents. | No. CV-24-00366-TUC-RCC<br><br>**ORDER** |

On November 11, 2025, Magistrate Judge Lynette C. Kimmins issued a Report and Recommendation ("R&R") in which she recommended the Court dismiss Petitioner Clinton Thoredore Eldridge's Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in Federal Custody (Non-Death Penalty) (the "Petition"). (Doc. 38.) The Court has reviewed the Petition (Doc.1), the Magistrate's R&R (Doc. 38), Petitioner's Objection (Doc. 40), Defendant's Response to Objection (Doc. 41), Petitioner's Amendment to Objection (Doc. 42), and Defendant's Response to Amendment (Doc. 43). Petitioner has also filed a Motion to Amend/Correct Objection to Report and Recommendation (Doc. 44), which the Court will further discuss below. Upon review, the Court will adopt the R&R and dismiss Petitioner's § 2241 Petition.

**I.    STANDARD OF REVIEW: REPORT AND RECOMMENDATION**

The standard the district court uses when reviewing a magistrate judge's R&R is dependent upon whether a party objects; where there is no objection to a magistrate judge's factual or legal determinations, the district court need not review the decision "under a *de*

*novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, when a party objects, the district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. §636(b)(1). Moreover, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte*, or at the request of a party, under *de novo* or any other standard." *Thomas,* 474 U.S. at 154.

In addition, arguments raised for the first time in an objection need not be reviewed. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) ("[A] district court may, but is not required to, consider evidence presented for the first time in a party's objection to the magistrate judge's recommendation.").

There being no objection to the procedural summary of this case, the Court adopts the Magistrate Judge's recitation of the facts and only summarizes them as necessary to address Petitioner's objections.

**II.   MAGISTRATE'S R&R**

Petitioner filed this §2241 Claim challenging his 2022 Parole hearing, where the Commission denied parole and gave Petitioner a three-year setoff until his next parole hearing. (Doc. 1.)

For Claim 1, the Magistrate Judge's R&R first concluded that Petitioner provided a "summary of his parole hearings occurring between 2010 and 2022 but did not allege a legal claim." (Doc. 38 at 3.) The Magistrate Judge found that Petitioner did not intend the information in Claim 1 to require a ruling and that Claim 1 is not a "cognizable claim." (*Id.*)

For Claim 2, the Magistrate concluded that the Parole Commission relied upon not the expunged disciplinary charge, but upon the Petitioner's statement "admitting to drug use three weeks prior to the parole hearing." (*Id.* at 4 (citing Doc. 25, Ex. A, Attach. 23).) "One of the non-exclusive factors that may be considered by the Parole Commission is the

prisoner's institutional experience, including his general adjustment and "behavior responses." (*Id.* (citing 28 C.F.R. § 2.80(p)(4)(v)[1].) The Magistrate thus concluded that "Petitioner's recent drug use while incarcerated was within the statutory parameters for the Parole Commission's consideration," and therefore, there is no basis for relief under this claim. (*Id.*)

For Claims 3 and 4, the Magistrate found that although she understood the frustration of being assigned to a Bureau of Prisons ("BOP") facility that did not provide the recommended Sexual Treatment Programs ("SOTP" or "SOTP-R"), the Petitioner is not entitled to relief under these claims. (*Id.* at 4–5.) First, his conviction status alone "empowers a custodial entity to place him in, or transfer him to, any of its prisons without Judicial review." (*Id.* (citations omitted)). Second, "a prisoner's eligibility for programs focused on rehabilitation is fully within the BOP's discretion and doesn't implicate Petitioner's due process protections. (*Id.* (citations omitted)). Furthermore, the Magistrate found that Petitioner's requested relief —seeking transfer to a different facility—was not within this Court's authority to grant. (*Id.*) Such relief rested within the authority of the BOP alone. (*Id.*) Petitioner also requested a new parole hearing be set within 90 days. (*Id.* at 5 n.2.) But a parole hearing occurred in September 2025—making this request moot. (*Id.* (citing *Eldridge v. Von Blankckensee*, No. CV 21-0008-TUC-RCC, 2024 WL 2880642, at *3 (D. Ariz. June 7, 2024).)

Finally, the Petitioner's final claim, although not listed as an independent claim in his Memorandum of Law (Doc. 1-1 at 2), challenges the Parole Commission's failure to apply the 1972 D.C. Parole Guidelines. (Doc. 38 at 6.) However, the Magistrate found that because the Hearing Examiner stated he was using those guidelines and applying those guidelines, the "Court has no basis to conclude that the 2022 hearing was conducted under the wrong guidelines" and further stated that setting a 3-year set off (i.e. the time between parole hearings) was well within the Commission's statutory authority and it was not arbitrary. (*Id.*) The Magistrate further found that the 2019 set off was solely based on the

---

[1] The R&R originally cited to "28 U.S.C. § 2.8(p)(4)(v)." The Court believes the Magistrate Judge intended to mean "C.F.R." and not "U.S.C."

1  Petitioner's failure to complete the recommended treatment programs, and the same held
2  true for the 2022 parole hearing. (*Id.*) Plus the fact that Petitioner had ingested drugs, which
3  was against the institutional rules. (*Id.*) Therefore, the three-year set off "remained a
4  rational decision by the Parole Commission." (*Id.*)

### III. PETITIONER'S OBJECTIONS

#### a. Commission's Consideration of Drug Infraction

Petitioner argues that no information regarding prior Suboxone infractions should have been considered in the denial of his parole. (Doc. 40 at 1.) Specifically, Petitioner states that the transcripts related to the expunged infraction should not have been considered. (*Id.* at 2.) He claims, therefore, that the decision and ruling by the Parole Commission "affected the duration of petitioner's confinement. . . as such violated petitioner's due process rights." (*Id.* (citations omitted)).

A § 2241 Petitioner may challenge the Parole Commission's reliance on inaccurate information. *Elliot v. United States*, 572 F.2d 238, 239 (9th Cir. 1978) (citing *Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938 (2d Cir. 1976)). Petitioner cites to *Williams v. Reynolds*, where the Tenth Circuit held, "When a record is expunged from a prisoner's file, prison authorities may not use the underlying facts surrounding the expunged incident to make decisions adversely affecting the prisoner." 53 F.3d 343, 1995 WL 261107 at *2 (10th Cir. 1995).

Here, Petitioner argues that his statement admitting to the use of drugs should not have been used by the commission because it was a part of the underlying facts surrounding an expunged infraction. However, as correctly stated by the Magistrate Judge, the Commission relied not on unproven facts in the disciplinary hearing officer ("DHO") report or transcripts of the infraction hearing, but on the Petitioner's own admission at the parole hearing about the drug use. (Doc. 38 at 4; *see also* Ex. A, Doc. 25-3 at 159; Ex. D, Doc. 25-6 at 8.)

#### b. Petitioner's Amended Response

Petitioner next argues that the Magistrate should have considered the Amendment

- 4 -

to Response to Answer to Petition for Writ of Habeas Corpus. (Doc. 37.) The Amendment specifically argues that the parole hearing held on September 26, 2025 "relied on testimony regarding the usage of Suboxone as an issue to deny petitioner parole a second time for the same facts. . . ." (*Id.* at 3.) He further contends that this "double counting" of facts violates the due process clause and "amounts to arbitrary and [capricious] decision making by the U.S. Parole Commission." (*Id.* (cleaned up)).

The Petition addressed only the 2022 parole hearing. As correctly stated by the Magistrate, Petitioner's attempt to amend the Petition to include his 2025 parole hearing was beyond the scope of this Petition because the 2025 parole proceedings were not included in the original Petition nor briefed by the parties. (Doc. 38 at 2 n.1.) Therefore, the Magistrate did not err in not reviewing Petitioner's Amendment.

  *c.   Commission's Vague Allegations of Negative Behavior*

Petitioner then argues that the Parole Commission "does not state or refer to what recent negative institutional behavior petitioner was to have been involved." (*Id.* at 3.) Petitioner questions whether it was the July 23, 2008 matter, which was discipline for the destruction of property (*Id.* at Ex. B), or the Suboxone incident that occurred just before the Parole hearing in 2022, and argues that the "reasons for denying parole should have been clearly stated in the Notice of Action . . . ." (*Id.* (citing *Swarthoul v. Cooke*, 562 U.S. 216 (2011)). He continues that the "silent wording" used in the Notice of Action, which were the terms "recentness," "severity," and ". . . negative institutional behavior," was an arbitrary and capricious decision by the Parole Commission because it did not state the full reasons for the Notice of Action and "deprived petitioner an [sic] fair opportunity to raise this issue in the writ of habeas corpus." (*Id.* at 5 (citation omitted).)

The Parole Commission specifically wrote the following regarding its denial of Petitioner's parole:

> After consideration of all factors and information presented, at this time, the Commission is denying your parole and exceeding the normal rehearing schedule for the following reasons: The Commission finds you remain a

more serious risk to re-offend based on your status as an untreated sexual predator and based on your admission of drug use only weeks before the thus current parole reconsideration hearing. Specifically, the Commission has previously recommended that you participate and complete a Sex Offender Treatment Program within the Bureau of Prisons. You have failed to complete such programming and you now deny committing the rape offenses you remain convicted for. Additionally, you admitted at this hearing to using Suboxone only weeks before this parole reconsideration hearing. In addition to your continued status as an untreated sex offender, the Commission also finds the recentness and severity of your negative institutional behavior indicates that you are not ready to remain crime-free in the community at this time. The Commission finds your continued incarceration, even beyond the ordinary 12-month rehearing schedule is necessary to protect the public, to allow sufficient time for you to complete the recommended programming, and to allow sufficient time for you to demonstrate you can abide by the rules of the institution over a sustained period of time.

(Doc. 25 at Att. 32, at 1.)

This portion of the notice clearly states the factors used by the Commission to make its decision. The "negative institutional behavior" at the time that was recent and severe was his admission to the use of Suboxone. (*See id.*) Thus, the Commission made a rational conclusion directly related to his admitted use of Suboxone.

d. *Failure to Consider Amendment*

Next, Petitioner argues that the Court "failed to consider an Amendment by the submission of the Notice of Action that was issued" on September 26, 2025. (Doc. 40 at 5.) Petitioner "put the court on notice of how the up-coming parole decision could have [an] impact on this case. . . ." (*Id.* at 5.) He argues that it had a significant impact. He states that the hearing gave Petitioner a 48-month set off, higher than a 36-month set off "for two of the disciplinary infractions that were testified to[], and for the Suboxone issue as well." (*Id.* (citing Ex. C, Doc. 25-5)).

Again, Petitioner's claim is against the 2022 Parole hearing. The 2025 hearing was beyond the scope of the Petition because it had not been included in his original Petition nor briefed by the Parties. (Doc. 38 at 2 n.1.) Therefore, the amendment did not need to be considered.

- 6 -

  *e. Failure to Transfer to Another Facility with Services*

  Next, Petitioner reiterates how he has been denied parole due to non-completion the recommended Sex Offender Treatment Program. (Doc. 40 at 6.) Petitioner states that he understands that there are no due process implications regarding a transfer to a different facility and the Court is unable to order such transfer. (*Id.* at 7.) However, Petitioner believes the Court can ask the Attorney General to "investigate or seek reasons why petitioner h[as] not been transferred to a prison that provide the (SOTP-R)." (*Id.*)

  Petitioner's incarceration means that the custodial entity may place him in, or transfer him to, any of its prisons without judicial review. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (finding due process not implicated by transfer to a prison despite substantially negative impact on prisoner); *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) (holding that prison transfers are at the discretion of prison officials regardless of the motive); 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.") As such, the discretion and reasoning belong solely to the Bureau of Prisons, and as such the Court cannot request the Attorney General to investigate its reasons as to why Petitioner has not been transferred to a prison that offers any Sex Offender Treatment Programs.

  *f. Imposition of the Three-Year Setoff*

  Finally, Petitioner argues that regarding the imposition of the three-year set off that "(1) the public has been protected for over 40 years from incarceration of petitioner; (2) Petitioner have tried since 2016 to enter the Sex Offender Treatment Program, and 14 years while at ADXMAX which did not provide the program." (*Id.* at 9.) He argues that it is not about due process, but about the fact that "respondent abusing its' authority," and that as long as he remains at the prison, his "chances of parole are very, very slim. . . ." (*Id.*); (3) He further argues that the Parole Commissioner relied on disciplinary infractions from 2008, and that such infractions "should not have been considered . . . ;" and (4) that his "ingesting of drugs" should not have been a reason to deny Petitioner parole or relief

because the infraction was expunged. (*Id.*) Petitioner concludes, stating that he did complete the Sex Offender Management Program at USP Tucson, and other programs, which were recommended for Petitioner to do if he did not have access to the Sex Offender Treatment Program. (*Id.* at 10–11.)

Petitioner correctly states that the three-year set-off "was necessary to protect the public, allow sufficient time to complete the recommended Sex Offender Treatment Program, and to allow sufficient time to *demonstrate he can observe the rules of the institution over a sustained period of time*." (Doc. 25, Ex. D at 8–9 (emphasis added).) Petitioner's ingestion of drugs three weeks before the parole hearing in 2022 clearly violated the rules of the institution. (*See* Doc. 40, EX. C at 6.) The Parole Commissioner himself even stated that he was not basing his recommendation solely on the fact that Petitioner couldn't take the sex offender treatment program. (*See id.*) Coupled with the fact that Petitioner did not admit to his sexual offenses, such a set-off was rationally based on all the facts presented (*Id.*) Furthermore, as noted by the Magistrate Judge, the three-year set-off had already been deemed rational and did not violate Petitioner's due process rights. *See Eldridge v. Von Blanckensee*, No. CV-21-00081-TUC-RCC, 2024 WL 2880642, at *4 (D. Ariz. June 7, 2024).

As for his completion of the Sex Offender Management Program, Petitioner did not offer proof of this completion within his original objection, but in his Amendment to Objection instead. (Doc. 42.) The certificate shows that the program was not completed until 2023. (*Id.* at Ex. E.) Therefore, the Parole Commission could not have taken it into consideration at the hearing in 2022.

g. *Petitioner's Amendment to Objection*

Petitioner has filed this Amendment to Objection, merely repeating arguments he made in his first Objection (Doc. 42.) While his arguments are no different than those made in is original Objection, Petitioner's Amendment cites to case law in support. However, the cases Petitioner cites to are either irrelevant or support the Defendant's position instead. *See United States v. Hall,* No CR-90-17-GF-BMM, 2020 U.S. Dist. LEXIS 39564 (D.

Mont. Mar. 6, 2020) (addressing supervised release, not parole)); *Love v. Owens*, No. A-13-CV-574-LY, 2015 U.S. Dist. LEXIS 181253 at \*25 (W.D. Tex. Mar. 25, 2015) (finding that incarcerated persons in prison do not have a liberty interest in being released on parole); *Docken v. Chase*, 393 F.3d 1024, 1032 (9th Cir. 2004) (addressing what a cognizable claim is under the federal habeas statute), *overruled in part by Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (discussing that a § 1983 actions for claims that are not the "core of habeas corpus"); *Beebe v. Heil*, 333 F. Supp. 2d 1011, 1013 (D. Colo. 2004) (addressing a 14th Amendment Claim related to inmate's removal from the Sex Offender Treatment Program).

Petitioner also cites to *Turnage v. Bledsoe*, No. 3:08-CV-1662, U.S. Dist. LEXIS 93926, (M.D. Pa. Sep. 9, 2010), which directly supports Defendant's case by holding that "the fact that a sex offender treatment program was unavailable at USP-Lewisburg" did not preclude the Parole Commission from considering that the plaintiff had not completed that program. *Id.* at \*20–21. In *Turnage*, the court held that the Parole Commission did not have the authority, nor the obligation to ensure that those programs are provided by the correction authorities. *Id.* The Parole Commission is responsible for assessing the risk posed by the applicant, and completion of the recommended programs are rationally related to that assessment. *Id.*

All other cases are irrelevant and unrelated to parole or Petitioner's due process arguments. *See Gelagotis v. Boncher*, No. 22-CV-11697-DLC, 2023 U.S. Dist. LEXIS 175170 (D. Mass. Sep. 29, 2023) (discussing miscalculation of FSA credits); *Gardner v. United States*, 184 F. Supp. 3d 175 (discussing standard of proof for an Eighth Amendment deliberate-indifference claim); *White v. Spaulding*, No. 19-11102-FDS, 2020 U.S. Dist. LEXIS 72528 (D. Mass. Apr. 24, 2020) (same).

Therefore, Petitioner's Amendment does not demonstrate that the Magistrate Judge erred in determining that the Petition should be dismissed.

h. *Motion to Amend/ Correct Objection*

Finally, Petitioner filed this Motion to Amend/Correct his Objection to the R&R.

(Doc. 44.) It appears these corrections are grammatical in nature. (*Id.*) The Court's ability to comprehend the Objection is not hindered by the errors, and so amendment is not necessary

Therefore**, IT IS ORDERED:**

1. Magistrate Judge Kimmins' Report and Recommendation is **ADOPTED**. (Doc. 38.)
2. Clinton Thoredore Eldridge's Petition under 28 U.S.C § 2241 for Writ of Habeas Corpus by a Person in Federal Custody is **DENIED**. (Doc. 1.)
3. Petitioner's Motion to Amend/Correct Objection to Report and Recommendation is **DENIED AS MOOT**. (Doc. 44.)
4. The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 26th day of January, 2026.

_____
Honorable Raner C. Collins
Senior United States District Judge